8/6/2019 3:21 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-19-004574
Ruben Tamez

D-1-GN-19-004574

CAUSE NO. _____

| | | |
|---|---|---|
| **JIMMY LEE CLAYPOOL,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | 261ST |
| | § | _____ **JUDICIAL DISTRICT** |
| **STEADFAST INSURANCE** | § | |
| **COMPANY** | § | |
| *Defendant.* | § | |
| | § | **TRAVIS COUNTY, TEXAS** |
| | § | |

---

## PLAINTIFF'S ORIGINAL PETITION & REQUEST FOR DISCLOSURE

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **JIMMY LEE CLAYPOOL,** hereinafter called "Plaintiff," complaining of **STEADFAST INSURANCE COMPANY,** hereinafter referred to as "Defendant" and for cause of action would respectfully show the Court the following:

## I.
## DISCOVERY CONTROL PLAN

1.00    Plaintiff desires that discovery be conducted under Discovery Level 3 pursuant to Tex. R. Civ. P. 190.4 Plaintiff will attempt to enter into an agreed discovery control plan with Defendant. However, failing an agreement on the issues, Plaintiff requests that the Court enter an appropriate discovery control plan tailored to the specific facts and circumstances of this lawsuit.

---

## II.
## STATUS OF PARTIES AND SERVICE

2.00   Plaintiff **JIMMY LEE CLAYPOOL** is an individual who resided in Williamson County, Texas at the time of the subject wreck.

2.01   Defendant, **STEADFAST INSURANCE COMPANY** is a domestically licensed insurance company authorized to do and doing business in the State of Texas.  Defendant, **STEADFAST INSURANCE COMPANY**, may be served with process by service upon its attorney for service, **Corporation Service Company,** at their registered office located at **211 E. 7TH Street, Suite 620 in Austin, Texas, 78701-3218**.

## III.
## JURISDICTION AND VENUE

3.00   Jurisdiction and Venue are proper in Travis County, Texas, pursuant to Texas Civil Practices and Remedies Code §15.002 (a)(1), in that Travis County is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

3.01   No federal question exists and complete diversity of citizenship fails to exist.

## IV.
## FACTS

4.00   On October 16, 2015, at approximately 7:01am, Plaintiff JIMMY LEE CLAYPOOL was under the course and scope of employment for LYFT INC. Plaintiff, accepted a ride request for a passenger and was driving to pick them up. Plaintiff was driving a 2012 blue Toyota Camry passenger car northbound on US Highway 183

Service Road in Austin, Texas. On the same date and at the same time, REYES CAMACHO-BOTELLO was traveling southbound in the 7900 block of North Lamar Boulevard, in Austin, Travis County, Texas driving a 1997 white GMC Yukon Sport Utility Vehicle, License plate number CJL1163. As Plaintiff proceeded through the intersection of US Highway 183 and Lamar Boulevard, without caution or reason, Defendant ran a red light and collided with. Defendant's negligence proximately caused injuries and damages to Plaintiff.

## V.

## NEGLIGENCE OF REYES CAMACHO-BOTELLO

5.00   REYES CAMACHO-BOTELLO had a duty to exercise the degree of care that a reasonably prudent person would use to avoid harm to others under circumstances similar to those described herein.  The injuries and damages sustained by JIMMY LEE CLAYPOOL were proximately caused by REYES CAMACHO-BOTELLO's negligence and gross negligence.  The negligence and gross negligence of REYES CAMACHO-BOTELLO consisted of, but is not limited to, the following acts and omissions:

a.   failure to yield the right of way at an intersection; running a red light;

b.   failing to keep a proper lookout or such lookout, which a person of ordinary prudence would have maintained under same or similar circumstances;

c.   failing to timely apply the brakes of the vehicle they were driving in order to avoid the collision in question;

d.   operating their vehicle at a rate of speed that was greater than an ordinary prudent person would have driven under same or similar circumstances;

e.   failing to take proper evasive action in an effort to avoid the collision in question;

---

      f.      failing to pay attention to the road and traffic conditions;
      g.     engaging in distracted driving; and
      h.     in all things, failing to act as a reasonable person of ordinary prudence under the same or similar circumstances.

5.01   REYES CAMACHO-BOTELLO's negligent conduct was more than momentary thoughtlessness or inadvertence.  Rather, the acts and/or omissions by REYES CAMACHO-BOTELLO outlined in the above paragraphs constitute gross negligence as that term is defined in §41.001(11) of the CIVIL PRACTICE & REMEDIES CODE. REYES CAMACHO-BOTELLO's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff.  REYES CAMACHO-BOTELLO had actual, subjective awareness of the risk involved but, nevertheless, proceeded in conscious indifference to the rights, safety, or welfare of the Plaintiff or others similarly situated.

5.02   Further, REYES CAMACHO-BOTELLO failed to exercise the mandatory standard of care in violation of the following:

TEXAS TRANSPORTATION CODE. §545.007 (d), which states, "An operator of a vehicle facing only a steady red signal shall stop at a clearly marked stop line. In the absence of a stop line, the operator shall stop before entering the crosswalk on the near side of the intersection. A vehicle that is not turning shall remain standing until an indication to proceed is shown. After stopping, standing until the intersection may be entered safely, and yielding right-of-way to pedestrians lawfully in an adjacent crosswalk and other traffic lawfully using the intersection, the operator may: (1) turn right; or (2) turn left, if the intersecting streets are both one-way streets and a left turn is permissible.";

Transportation Code, § 545.351, which states, "an operator may not drive at a speed greater than is reasonable and prudent under the circumstances then existing."

5.03   Each of these acts and/or omissions, whether taken singularly or in any combination constitutes negligence, negligence *per se*, and gross negligence, which proximately caused the collision and injuries and other losses as specifically set forth herein.

## VI.
## DAMAGES

6.00   As a direct and proximate result of the collision and the negligent conduct of REYES CAMACHO-BOTELLO, Plaintiff JIMMY LEE CLAYPOOL suffered bodily injuries as reflected in the medical records from the health care providers that have treated the injuries since the collision.  The injuries are likely to be permanent in nature. The injuries have had an effect on Plaintiff's health and well-being.  As a further result of the nature and consequences of her injuries, Plaintiff has suffered and will likely continue to suffer into the future, physical pain and mental anguish.

6.01   As a further result of all of the above, Plaintiff, JIMMY LEE CLAYPOOL, has incurred expenses for his medical care and attention in the past and may incur medical expenses in the future to treat his injuries.

6.02   Plaintiff respectfully requests that the trier of fact determine the amount of his damages and losses for:

a.  Pain and suffering in the past;
b.  Pain and suffering in the future;
c.  Mental anguish in the past;
d.  Mental anguish in the future;
e.  Past medical expenses;
f.  Future medical expenses;
g.  Physical impairment in the past;
h.  Physical impairment in the future;

        i.  Physical disfigurement in the past;
        j.  Physical disfigurement in the future;
        k.  Loss of earnings in the past; and
        l.  Loss of earning capacity in the future.

6.03    Pursuant to RULE 47 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff seek

monetary relief of **OVER ONE MILLION AND 00/100 DOLLARS ($1,000,000.00)**,

including damages of any kind, penalties, costs, expenses, pre-judgment interest, and

attorney fees, and a demand for judgment for all the other relief to which Plaintiff is

justly entitled at the time of filing this suit, which, with the passage of time, may

change.

### VII.

### CONTRACTUAL CLAIMS AGAINST STEADFAST INSURANCE COMPANY

7.00   At the time of the wreck made the basis of this lawsuit, **JIMMY LEE**

**CLAYPOOL** was a listed, covered person, under the automobile insurance policy

with **STEADFAST INSURANCE COMPANY** that afforded **JIMMY LEE**

**CLAYPOOL** underinsured motorist coverage.   Specifically, **JIMMY LEE**

**CLAYPOOL** was insured, for purposes of the subject car crash, under **STEADFAST**

**INSURANCE COMPANY'S** automobile insurance policy number SEA-0029992833-

29.  The identified policy of insurance providing Underinsured Motorist Coverage to

**JIMMY LEE CLAYPOOL** as a result of the subject car crash was in full force and

effect at the time of the subject car crash.  The injuries and damages complained of

herein were all proximately caused by the negligence and negligence *per se*

complained of above committed by **REYES CAMACHO-BOTELLO** at the time of

the subject car crash.  As Plaintiff's damages greatly exceed **REYES CAMACHO-BOTELLO'S** policy limits, **REYES CAMACHO-BOTELLO** was underinsured in regards to the damages sustained by Plaintiff as a result of the subject wreck. Furthermore, the personal insurance policy providing Underinsured Motorist Coverage to **JIMMY LEE CLAYPOOL** by State Farm as a result of the subject car crash was in full force and effect at the time of the subject car crash.  As Plaintiff's damages greatly exceed his underinsured motorist policy limits, **JIMMY LEE CLAYPOOL** was underinsured in regards to the damages sustained as a result of the subject wreck.  Plaintiff has performed all conditions precedent to seeking benefits under the insurance policies identified above that provided **JIMMY LEE CLAYPOOL** with Underinsured Motorist Coverage at the time of the subject wreck. Accordingly, Plaintiff therefore seeks contractual benefits under the identified UIM policy of **STEADFAST INSURANCE COMPANY** that provided **JIMMY LEE CLAYPOOL** with Underinsured Motorist Coverage at the time of the car crash.

## VII.
## INTEREST

8.00    Plaintiff further requests both pre-judgment and post-judgment interest on all his damages as allowed by law.

## VIII.
## DESIGNATED E-SERVICE EMAIL ADDRESS

9.00    The following is the undersigned attorney's designated E-Service email address for all e-served documents and notices, filed and unfiled, pursuant to Tex. R. Civ. P. 21(f)(2) & 21a: danjchristensen@gmail.com. This is the undersigned's only E-

Service email address, and service through any other email address will be considered invalid.

## IX.
## REQUEST FOR DISCLOSURE TO DEFENDANT

11.00  Plaintiff requests that Defendant disclose the information contained in Tex. R. Civ. P. 194.2(a) through (l) within 50 days of the date this matter is served upon them.

## X.
## NOTICE OF SELF-AUTHENTICATION

11.00  Pursuant to RULE 193.7 of the TEXAS RULES OF CIVIL PROCEDURE, Defendant is hereby noticed that the production of any document or things in response to Plaintiff written discovery authenticates the document for use against the Defendant in any pretrial proceeding or at trial.

## XI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that Defendant be cited to appear and answer, and on final trial hereafter, Plaintiff have judgment against Defendant in an amount within the jurisdictional limits of this Court, together with all pre-judgment and post-judgment interest as allowed by law, costs of Court, for compensatory and exemplary damages, and for such other and further relief, in law and in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

*/s/ Dan Christensen*
**DC LAW, PLLC**
Dan Christensen
SBN: 24010695

danjchristensen@gmail.com
1012 W. Anderson Ln.
Austin, Texas 78757
T: (512) 220-1800
F: (512) 220-1801
*Attorney for Plaintiff*

## WRITTEN DISCOVERY FOR DEFENDANT IS ATTACHED HERETO AS EXHIBIT 'A'

# EXHIBIT "A"

# WRITTEN DISCOVERY TO
# DEFENDANT STEADFAST INSURANCE COMPANY

Unofficial copy Travis Co. District Clerk Velva L. Price

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT STEADFAST INSURANCE COMPANY

Plaintiff, JIMMY LEE CLAYPOOL, serves these their First Set of Interrogatories upon Defendant, STEADFAST INSURANCE COMPANY, pursuant to TEX. R. CIV. P. 197. Defendant must serve a written response to the requesting party no later than fifty (50) days after the date these interrogatories are served upon Defendant.   See TEX. R. CIV. P. 197.2(a).   Defendant is further requested to supplement all answers to this First Set of Interrogatories as required by the TEXAS RULES OF CIVIL PROCEDURE.

Respectfully Submitted,

*/s/ Dan Christensen*
**DC LAW, PLLC**
Dan Christensen
SBN: 24010695
danjchristensen@gmail.com
1012 W. Anderson Ln.
Austin, Texas 78757
T: (512) 220-1800
F: (512) 220-1801
*Attorney for Plaintiff*

## DEFINITIONS

As used in the interrogatories, the words and terms set forth below shall mean:

[1.1]  "Plaintiff" or "Plaintiffs", when used, refers to each and every plaintiff in this lawsuit, their agents, employees, representatives, attorneys and/or insurers.

[1.2]  "You", "Your", "Yourself" or "Defendant", as used herein, mean: **STEADFAST INSURANCE COMPANY,** its agents, employees, representatives, attorneys and/or insurers.

[1.3]   "Document", "documents", and "documentation" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto. Without limiting the foregoing, the terms "document" and "documents" shall include all log books, agreements, contracts, communications, correspondence, letters, telegrams, facsimile transmissions, telexes, messages, memoranda, records, reports, books, summaries, or other records of personal conversations, minutes, or summaries, or other records of meetings and conferences, summaries or other records of negotiations, other summaries, diaries, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, financial statements, work sheets, work papers, drafts, graphs, maps, charts, tables, accounts, analytical records, consultants' reports, appraisals, bulletins, brochures, pamphlets, circulars, trade letters, press releases, notes, notices, marginal notations, notebooks, telephone bills or records, bill statements, records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, canceled checks, letters of credit, envelopes or folders or similar containers, vouchers, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored, or electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated, or made.

[1.4]   "The Incident" as used herein means the car wreck between JIMMY LEE CLAYPOOL and REYES CAMACHO-BOTELLO occurring on October 16, 2015 in Travis County, Texas.

[1.5]   "Identify" or "Identification":

(1)      When used in reference to a person, "identify" or "identification" means to state his or her full name, present or last known residence address, present or last known business address and telephone number.

(2)      When used in reference to a public or private corporation, governmental entity, partnership or association, "identify" or "identification" means to state its full name, present or last known business address or operating address, the name of its chief executive officer and telephone number.

(3)      When used in reference to a document, "identify" or "identification" shall include statement of the following:

(a)     The title, heading, or caption, if any, of such document;

(b)     The identifying number(s), letter(s), or combination thereof, if any; and the significance or meaning of such number(s), letter(s), or combination thereof, if necessary to an understanding of the document and evaluation of any claim of protection from discovery;

(c)     The date appearing on such document; if no date appears thereon, the answer shall so state and shall give the date or approximate date on which such document was prepared;

(d)     The number of pages and the general nature or description of such document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.), with sufficient particularity so as to enable such document to be precisely identified;

(e)     The name and capacity of the person who signed such document; if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

(f)     The name and capacity of the person to whom such document was addressed and the name and capacity of such person, other than such addressee, to whom such document, or a copy thereof, was sent; and

(g)     The physical location of the document and the name of its custodian or custodians.

(4)     When used in reference to a "Social Media" website, "identify" or "identification" shall include stating the following:

(a)     The name of the "Social Media" website;

(b)     Your account name on the identified "Social Media" website;

(c)     The date and time you placed anything responsive on the "Social Media" website;

(d)     If the responsive material was in writing, a verbatim statement of what was placed on the "Social Media" website;

(e)     If the responsive material is a photograph, a description of the

photograph, the date the photo was taken, the date the photo was place on the "Social Media" website and the name, address and phone number of all people depicted in the photograph;

(f)    If there are any comments, likes, or other types of responses to your postings on a "Social Media" website, a verbatim recitation of the comment(s) and the name, address and phone number of all people commenting, liking or responding to your posting;

(g)    In lieu of the details required in answering (a) through (f) above, you can simply provide the name of your social media account, your username and password (and any other information necessary to access the account) in your answer so that your account on the identified "Social Media" website may be accessed and reviewed by the party and attorney propounding these discovery requests.

[1.6]    "Social Media", when used, refers to accounts, statuses, statements, blogs, tweets, updates, postings, pictures, check-ins, and listings on any of the following internet based social media sites to include, without limitation: Facebook, Twitter, LinkedIn, You Tube, Flickr, Instagram, Tumblr, CaringBridge, Path, Vine-Video, Snapchat, Talkwalker and/or MySpace.

## FIRST SET OF INTERROGATORIES TO DEFENDANT STEADFAST INSURANCE COMPANY

**INTERROGATORY NO. 1:** Identify (name, address, telephone number, driver's license number, employer, job title, and job description) of all persons who prepared or in any way assisted in preparing the answers to these interrogatories and Plaintiff's requests for production.

**ANSWER:**

**INTERROGATORY NO. 2:** Please detail the evaluation process of each of the Plaintiff's claims including the name(s), address (es), telephone number(s), employer, job title, and job description of each and every single person that has any dealing with the Plaintiff's claims in this case during the evaluation process.

**ANSWER:**

**INTERROGATORY NO. 3:** Is a computer program utilized to evaluate Plaintiff's claims? If so, please state the name of the program used, the specific data utilized by the program in evaluating the Plaintiffs claims, all fields of data the program deems relevant in evaluating injury claims, the identity of all persons that input data into

said program for analysis of Plaintiff's claims, the means by which the results of the program's analysis are presented to the program user and claims adjuster(s), the identity of all persons receiving such results, and the methods by which results of the program's analysis are distributed to various end users of this information.

**ANSWER:**

**INTERROGATORY NO. 4:** Please provide a listing of all manuals, instructions, directions, and materials providing guidance as to the use of any and all computer programs utilized by Defendant in evaluating injury claims.

**ANSWER:**

**INTERROGATORY NO. 5:** Please fully explain any and all bases you contend support your contention that policy limits should not be tendered in payment of Plaintiff's claims.

**ANSWER:**

**INTERROGATORY NO. 6:** Please identify the agent or employee of Defendant with the most knowledge of the analysis and valuation of Plaintiff's claims in this case.

**ANSWER:**

**INTERROGATORY NO. 7:** Please state in full detail each and every contention or denial of liability on Plaintiff's claims made the basis of this suit.  Include in your answer:

    (a)    all facts known to you which you contend support or corroborate each such denial;

    (b)    the name, business and residence address, and telephone number of each person known to you who claims to have any knowledge relating to each such denial of Plaintiff's claims; and

    (c)    the name, business and residence address, and telephone number of the present custodian of any writings in support of each such denial.

**ANSWER:**

**INTERROGATORY NO. 8:**  Do you contend that Plaintiff was not a "covered person" under the Insurance Policy by **STEADFAST INSURANCE COMPANY** at the date and time of the incident made the basis of this lawsuit?  If so, please explain the basis for your contention.

**ANSWER**:

**INTERROGATORY NO. 9**:  Do you contend that the 2012 Blue Toyota Camry being driven by Jimmy Lee Claypool at that place and time of the incident made the basis of this lawsuit was not a "covered vehicle" under Insurance Policy issued by **STEADFAST INSURANCE COMPANY** at the date and time of the incident made the basis of this lawsuit?  If so, please explain the basis for your contention.

**ANSWER**:

**INTERROGATORY NO. 10**:  Do you agree that Jimmy Lee Claypool was covered by the Underinsured Motorist Coverage under the Insurance Policy issued by **STEADFAST INSURANCE COMPANY** at the date and time of the incident made the basis of this lawsuit?  If not, please explain the basis for your belief that Jimmy Lee Claypool was not provided UIM coverage under such policy.

**ANSWER**:

**INTERROGATORY NO. 11**:  Do you agree that the negligence of Reyes Camacho-Botello was the primary cause of the car crash on the date and time of the incident made the basis of this lawsuit?  If not, please explain the basis for your belief that the car crash on October 16, 2015 occurring between vehicle driven by Jimmy Lee Claypool and Reyes Camacho-Botello was caused by something other than the negligence of Reyes Camacho-Botello.

**ANSWER**:

**INTERROGATORY NO. 12**:  Do you agree that the collective damages of Jimmy Lee Claypool as a result of the subject car wreck exceed $30,000?  If not, please explain the basis for your belief that damages asserted by the Plaintiff in this lawsuit are less than $30,000.00.

**ANSWER**:

**INTERROGATORY NO. 13**:  If Reyes Camacho-Botello has automobile liability insurance that only provides for the minimum coverage limits according to Texas law ($30,000 liability coverage), do you agree that Reyes Camacho-Botello was underinsured in regards to the injuries and damages claimed by Plaintiff in this lawsuit?  If not, please explain the basis for your belief that Reyes Camacho-Botello would not be underinsured in regards to the damages alleged in this lawsuit.

**ANSWER**:

**INTERROGATORY NO. 14:**   Please state the date upon which **STEADFAST INSURANCE COMPANY** anticipated litigation in regards to the subject wreck and identify and describe the things that caused it to anticipate litigation.

**ANSWER:**

**INTERROGATORY NO. 15:** Please identify and describe by amount, date paid, and payee of the check all payments made under the Personal Injury Protection and/or Medical Payments coverage portion of the Insurance Policy issued by **STEADFAST INSURANCE COMPANY** that was in effect on October 16, 2015 that have been paid because of the events made the basis of this lawsuit.

**ANSWER:**

## PLAINTIFFS' REQUEST FOR PRODUCTION TO DEFENDANT STEADFAST INSURANCE COMPANY

Plaintiff serves the following Requests for Production pursuant to Tex. R. Civ. P. 196 upon Defendant. Plaintiff requests that Defendant produce for inspection and/or copying the documents or tangible things described below. All of said documents and tangible things are to be produced according to the definitions, conditions, and instructions set forth below. Responses to these requests are due within fifty (50) days of the date Defendant is served with these Requests.

**Definitions for Plaintiffs' Requests for Production:**

As used in these Requests for Production, the words and terms set forth below shall mean:

[1.1]   "Plaintiff", when used, refers to JIMMY LEE CLAYPOOL.

[1.2]   "You," "Your," "Yourself" or "Defendant," as used herein, mean: STEADFAST INSURANCE COMPANY, his attorneys, insurers, employees, agents and representatives.

[1.3]   "Document", "documents", and "documentation" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto. Without limiting the foregoing, the terms "document" and "documents" shall include all log books, agreements, contracts, communications, correspondence, letters, telegrams, facsimile transmissions, telexes, messages, memoranda, records, reports, books, summaries, or other records of personal conversations, minutes, or summaries, or other records of meetings and conferences, summaries or other records of negotiations, other summaries, diaries, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, financial statements, work sheets, work papers, drafts, graphs, maps, charts, tables, accounts, analytical records, consultants' reports, appraisals, bulletins, brochures, pamphlets, circulars, trade letters, press releases, notes, notices, marginal notations, notebooks, telephone bills or records, bill statements, records of obligation and expenditure, invoices, lists,

journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, canceled checks, letters of credit, envelopes or folders or similar containers, vouchers, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored, or electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated, or made.

[1.4]   "The Crash" as used herein means the automobile crash made the basis of this lawsuit as more particularly described in the petition on file in this matter.

**Instructions for Plaintiffs' Requests for Production:**

[2.1]   Data compilations, information recorded or microfilmed, microfiche, or tapes, discs, or other electronically recorded or stored materials or information must be produced in a form which permits the undersigned attorney to examine the same without aid or special equipment.

[2.2]   Documents and other tangible things produced in response to these requests should be clearly marked or labeled to correspond with each request numbered below.

[2.3.]  If any request set forth below "overlaps" another Request, so as to call for the same documents or tangible things, it shall be sufficient response to state under the "overlapping request" that the items have been produced. In such case, the request (where production was made) shall be specifically identified. Thus, where a document or tangible thing has been produced under a request, identical copies of the same document or thing need not be produced again unless it contains different markings, additions, or deletions or its content form, or make up, is distinguishable in any manner.

[2.4]   In order to assure that each item or thing requested is described with reasonable particularity, clarifying information is included under certain requests herein below set forth. In such case, the additional information either summarizes the central gist of the request or more specifically describes the document or things sought.

**Place and Date for Production**

[3.1]   Place: The documents and tangible things requested are to be produced at the DC Law, PLLC, 1012 W. Anderson Ln., Austin, TX 78757 during regular

business hours, within fifty (50) days after receipt of this request. If the documents and tangible things subject to this request are so voluminous and unwieldy so as to make physical delivery to Plaintiff's attorney's office impractical or unduly burdensome, Plaintiff is willing to entertain discussions regarding an alternative place for production.

**Requests for Production:**

You are requested to produce the following documents and tangible things which are in your actual or constructive possession, custody, or control:

1.    All recordings, record transcripts, and written statements made by the Plaintiff in the possession, constructive possession, custody or control of the Defendant, Defendant's attorney, or anyone acting on Defendant's behalf.

2.    All oral statements made by the Plaintiff which were either recorded or taped on an electronic device or recorder which are in the possession, constructive possession, custody or control of the Defendant, Defendant's attorney, or anyone acting on Defendant's behalf.

3.    All written statements made by any participants and/or witnesses to the transactions and occurrences which form the basis for this suit that are in the possession, constructive possession, custody or control of the Defendant, Defendant's attorney, or anyone acting on Defendant's behalf.

4.    All oral, taped, or recorded statements made by any participants and/or witnesses to the transactions and occurrences which form the basis of Plaintiff's lawsuit which are in the possession, constructive possession, custody or control of the Defendant, Defendant's attorney, or anyone acting on Defendant's behalf.

5.    A full and complete copy of the policy or policies of insurance providing coverage to the Plaintiff for the wreck made the subject of this lawsuit.

6.    All written reports of document review, inspection, tests, writings, drawings, graphs, charts, recordings or opinions of any expert who has been used for consultation and whose work product forms a basis either in whole or in part of the opinions of an expert who is to be called as a witness.  (If the discoverable factual materials has not been received or reduced to a tangible form, request is hereby made that the Defendant advise the Plaintiff accordingly and reduce such material to a tangible form).

7.    All documents received by you through the use of any type of authorization provided to you in this litigation by Plaintiff and/or any other Defendant.

8.    Copies of all records you have obtained in this lawsuit by way of use a subpoena and/or through depositions by written questions and/or through  a request for production to a third party.

9.    Copies of all documents you have exchanged with any other Defendant to this lawsuit that were not previously provided to Plaintiff's counsel in this lawsuit.

10.   The photographs taken in connection with Plaintiff's cause of action, claims or contentions set out in this lawsuit in your possession, constructive possession, custody or control.

11.   The photographs taken of the scene of the crash or the surrounding area of the scene of the crash in your possession, constructive possession, custody or control.

12.   The photographs taken of any Plaintiff that are in your possession, constructive possession, custody or control.

13.   The motion pictures, movies, or films of any kind taken of any Plaintiff that are in your possession, constructive possession, custody or control.

14.   The motion pictures, movies, or films of any kind concerning the scene, vehicles, products or the events and happenings made the basis of the lawsuit taken before, during or after the accident in question which are in your possession, constructive possession, custody or control.

15.   A copy of the documents that have been filed with any state, county, city, federal or governmental agency, institution or department containing information about Plaintiff which is in your possession, constructive possession, custody or control to include the peace officer's crash report.

16.   Copies of estimates, invoices, and/or any other written documentation that were prepared as a result of the damage to any vehicle involved in the crash.

17.   The documents that reflect you and/or your insurance paying for any of the property damage of the vehicles involved in the crash.

18.   The written communications, including letters and memorandums, between agents, employees and/or representatives of Defendant prepared before the date this lawsuit was filed that refer to the crash.

19.   The documents in the possession, constructive possession, custody or control of Defendants that were acquired in this lawsuit by subpoena and/or depositions

upon written questions and that pertain to any or all Plaintiff.

20. All reservation of rights letters issued by or on behalf of an insurance company pertaining to insurance coverage for the crash or this lawsuit.

21. A curriculum vitae or resume, written report, bibliography, fee agreement and list of cases each expert has testified in over the past ten years, whether live or by deposition, for each consulting expert in this matter.

22. Any and all non-privileged investigation documentation, reports and/or memoranda made by or submitted to Defendant, as a result of the claims asserted by Plaintiff which have been made the basis of Plaintiff' lawsuit (whether written, electronic, or otherwise). If you contend such documents are privileged, Plaintiff request a privilege log be prepared which details all such documents so Plaintiff may determine whether privilege applies and seek a judicial determination of privilege.

23. Copies of any and all relevant documents, reports, and/or memorandum in Defendant's possession which have resulted from the transactions and occurrences made the basis of Plaintiff' lawsuit. If you contend such documents are privileged, Plaintiff request a privilege log be prepared which details all such documents so Plaintiff may determine whether privilege applies and seek a judicial determination of privilege.

24. Copies of all contracts and agreements between Defendant and Plaintiff.

25. Copies of all correspondence and written communications by and between Defendant and/or any employee, agent, or independent contractor of Defendant and Plaintiff.

26. Copies of any and all manuals, instructions (whether written, electronic, or otherwise), and documents providing guidance for all computer program(s) utilized by Defendant to evaluate Plaintiff's injury claims. If you contend such documents are privileged, Plaintiff requests a privilege log be prepared which details all such documents so Plaintiff may determine whether privilege applies and seek a judicial determination of privilege.

27. Copies of any and all communications (whether written, electronic, or otherwise) by and between Defendant and any person, company, or entity Defendant has had evaluate the medical records of Plaintiff stemming from the claims asserted by Plaintiff in this cause. This request encompasses all communications, whether via letter, memo, facsimile, email, or any other communication of any kind. If you contend such documents are privileged, Plaintiff requests a privilege log be prepared which details all such documents

so Plaintiff may determine whether privilege applies and seek a judicial determination of privilege.

28.   A full and complete copy of Plaintiff's claim files with Defendant. If you contend such documents are privileged, Plaintiff requests a privilege log be prepared which details all such documents so Plaintiff may determine whether privilege applies and seek a judicial determination of privilege.

29.   Copies of the results of any and all computer analysis (whether written, electronic, or otherwise) of Plaintiff's claims in this case, as well as all documents and communications (whether written, electronic, or otherwise) disseminated by and/or between agents and/or employees of Defendant regarding such results. If you contend such documents are privileged, Plaintiff request a privilege log be prepared which details all such documents so Plaintiff may determine whether privilege applies and seek a judicial determination of privilege.

30.   Copies of all documents that Defendant contends support denial of Plaintiff's claims and/or tender of less than policy limits for Plaintiff's claims.

31.   Any and all documents described or utilized in responding to Plaintiff's Interrogatories and Request for Disclosure to Defendant. If you contend such documents are privileged, Plaintiff request a privilege log be prepared which details all such documents so Plaintiff may determine whether privilege applies and seek a judicial determination of privilege.

32.   Any and all documents you contend support any denial or contention on the part of Defendant that the accident forming the basis for these claims was not the cause of the injuries and damages complained of by Plaintiff and/or that there were other contributory causes for such injuries and damages.

33.   Pursuant to Tex. R. Civ. P. 203.3(c), request is hereby made for you to produce and/or make available for inspection and copying all completed Depositions Upon Written Questions that you have in your possession that related to this lawsuit.

34.   Any and all non-privileged investigation documentation, reports and/or memoranda made by or submitted to Defendant, as a result of the claims asserted by Plaintiffs which have been made the basis of Plaintiffs' lawsuit (whether written, electronic, or otherwise). If you contend such documents are privileged, Plaintiffs request a privilege log be prepared which details all such documents so Plaintiffs may determine whether privilege applies and seek a judicial determination of privilege.

35.    Copies of any and all relevant documents, reports, and/or memorandum in Defendant's possession which have resulted from the transactions and occurrences made the basis of Plaintiffs' lawsuit.  If you contend such documents are privileged, Plaintiffs request a privilege log be prepared which details all such documents so Plaintiffs may determine whether privilege applies and seek a judicial determination of privilege.

36.    With respect to each and every item described in any of the preceding Requests for Production which is not in the physical possession or custody of the Defendant, but which is in the Defendant's control, Plaintiff hereby requests that Defendant execute authorization(s) to allow Plaintiff to obtain and examine such items.